Retail Property Trust v. Nassau County Department of the Assessor All right, Mr. Smith. You can take a minute to get ready. Thank you, Your Honor. But you have reserved two minutes for rebuttal, so that gives you eight minutes to begin. Thank you, Your Honor. May I proceed? You may. The students have left, so your audience has shrunk drastically. And I was about to announce to them that mine should be much easier to follow I lost my opportunity, I guess. May it please the Court, my name is Jim Smith, and I represent the Appellant Retail Property Trust. And if time permits, I'd like to first address the Eighth Amendment question about the excessive fine. I don't know how far I'll get along with the due process issues. And then I would like to touch very briefly on the denial of motion for sanctions. Let me begin by saying that we respectfully argue that the Court erred in granting summary judgment for the defendants, and should have granted summary judgment for our client with respect to the excessive fines claim. And as this Court, I'm sure, knows, the heart of this controversy involves an offense for not submitting ASCII statements for two years, 2013 and 2014, which are essentially income and expense statements. And our client was fined $4.8 million, which, because of the amendment to the ASCII law, was 10,000 times more what the fine would have been in the prior year before the amendment. The legal test, as the Court knows, is a two-part test. There's no dispute that for Part A, whether this was a punitive fine, everybody agrees that it was. And the battleground here is whether or not it was excessive. And that triggers the flip. Right. So it's a percentage of, it's a 0.25 percent of the property value, right? It was 0.5 and then 0.75, Your Honor, if I'm recalling correctly. So it was a percentage of the fair market value of the property. Right. And so is there something which is categorically improper about a percentage-based fine? You wouldn't say that, right? I'm not making that argument, Judge. What I am saying is that when the It would be if the thing that's being punished isn't related to the size of the property, the value of the property. But here, the problem is that the county is on the hook for these tax certiorari procedures, and those costs are proportional to the value of the property, because we're talking about taxes paid on the property, right? So how could it be irrational to have a schedule of fines that's proportional to the value of the property? Well, Your Honor, I think if you look at the four-part test in Bakajian, if you start with the first element of that, the court, which is the essence of the offense, the court said that the county was deprived of information it intended to use to perform the assessment function. And in coming to that conclusion, the court gave no credit to or overlooked one of the most important factual pieces in the case, if not the most factual important piece. That's true. So in that case, you know, the guy was not committing some other criminal activity, right? And so you're saying, for us also, it's just an information problem. We're not, you know, it's not policing some other kind of criminal activity. Is that But that's, that's not the heart of what I'm arguing today, Judge. Okay, so in what size? Yeah. On that piece of evidence, and I, this pervades, I think, all of the issues in this case. There was a witness who testified in the case, Mr. Haberman. Haberman was the person who ultimately got the ACI data. He was the witness who testified that none of it was usable. But separate and apart from that, because that's not at the core of my argument, what's at the core of my argument is that with respect to the testimony in the record, the testimony in the record is un-contradicted. So when the court concluded that the county was denied information it intended to use for future assessments, the un-contradicted testimony in this record was that that information, with respect to the testimony in the record, was un-contradicted. I'm sorry. So does that mean that the argument is that this fine would be permissible as a general matter, but it's unconstitutional as applied to moles? Yes, as it applies to our client, Your Honor. If you go through the four-part test... But why would that be? Why shouldn't we think about it in terms of if the legislature can generally require this information from property owners, the Constitution doesn't require, you know, carve-outs for particular types of property? But I think it... Like, the law doesn't require you to operate a mole, right? Like, why does the county need to investigate the use of each property? Well, the way I read Bakkegian, Your Honor, before the county could assess that fine, it would have to pass constitutional scrutiny. In order to pass constitutional scrutiny under Bakkegian, it would have to pass the four-part test. So they have to consider every type of property owner and do a careful calculus before they pass the legislation? Well, no, Your Honor. What I would say is that before they could impose a fine of $4.8 million, there needed to be a constitutional basis to do it. And here, what the Court concluded was that that data could be used, when, in fact, the uncontradicted testimony was that it couldn't be used. Well, the... This... Excuse me, counsel. Yes. This may have been asked of that data, but he didn't say that data with regard to income and expenses was irrelevant in determining what the fair market value of your client's property was, did he? I think that's right, Your Honor. I don't think that was a dispute. In fact, what is your client's property assessed at? Your Honor, I apologize. Our client... You don't know? I'm surprised. In any event, how does one value a... How does one come to grips with the value of a commercial property in putting it on its assessment on the rolls? One of two ways, I would suspect, a comparable sale. Are there comparable sales of commercial malls the size of the Roosevelt Mall in Nassau and Suffolk County? So, Judge, that was exactly what Haberman's testimony was. The answer is no. Answer my question. Yeah, no. Are there comparable sales? No. No, there are not, are there? I'm familiar with Haberman's testimony. Second of all, there's another way to evaluate, and that's through the income capitalization method. So, one has to know both the income stream and the expenses. How much income does the property generate, correct? Yes, that's correct, Your Honor. Is that exactly what the program asked for? Yes, but to do... Then you conceded that the information that was asked for is relevant to... Excuse me, to understanding what the value is of the property, haven't you? No, I haven't, Your Honor. And there's nothing in the record that supports it, and the record directly contradicts it. Because there's... Well, I may disagree with you as to what Haberman said or the characterization of his testimony. I understand. I'm asking you, we can understand in evaluating your claim for excessive fines whether that information is relevant. We can understand how commercial properties are evaluated, can't we? You can, Your Honor. I... Did the legislature make a finding that this was relevant? The legislature could make a finding that it's relevant, but for purposes of our client's property, it was completely irrelevant. And that was the... And is the uncontradicted testimony from Haberman. You could not... But that's after the fact, isn't it, Mr. Spadafore? I don't... Does Bakajian contemplate that we should be focused at the time of the legislation being passed or at the time of the fine being imposed? I think both, Your Honor. I think when that fine was imposed in 2016, they knew that data couldn't be used. There's no dispute about that in the record. And I would submit that that is a key time... Because of the malls. I'm sorry, Your Honor? As applied to malls, you're saying it could... As applied to malls. If you look at... I guess there's just sort of three. I want to sort of connect these arguments to the excessive fines clause, right? There's different ways of thinking about this. I think you're saying as a general matter, they can impose a proportional fine to property, but maybe it doesn't work for particular kinds of property. And then there's this other question lurking in the background, which is the particular data they requested in the first couple years was actually not the right data to request, and then they refined the request. So you could think about the excessive fines clause as just... As a general matter, could the to do a property-by-property analysis to determine whether the information is relevant before they impose the fine? Or maybe we can take account of the fact that actually they kind of made a mistake earlier on in requiring this data as opposed to other data. So what in the excessive fines clause would tell us that instead of just kind of saying as a general matter, the legislature can describe a fine that might be an imperfect fit for every type of property, but it's allowed as long as it's not facially excessive, it's permissible? What do you think, maybe in the background of the clause or something, requires them to make a carve-out for different types of property? Your Honor, I interpret the Bakkegian decision as it applies to our client to go through those four factors, which is what the district court did, but ignored the evidence that would have compelled the other conclusion. That's how I interpret the Bakkegian decision and the cases that followed. And in this case, remember, the purpose of collecting this data wasn't one-off. It was to gather all similarly situated properties. Okay. So your argument is not limited to the particular fine, the information they were requesting in the first couple years. Your argument is they can generally have a fine for the failure to provide this information, but they do have to make sure that the information they're requesting is relevant to the type of property. That's what you're saying? That's, in part, that's one of the analytical approaches to Bakkegian, the way I read the decision, Your Honor. And here, there was no statistical analysis that could ever be done of that data. So what your argument would mean is that they can't require this information from your client unless your client starts using the property for some different purpose other than a mall. I think that's right. All right. We'll reserve a few minutes for Mr. Smith. We'll now hear from Mr. Sorkiewicz. Yes, thank you. Good morning. May it please the Court, Jonathan Sorkiewicz for Nassau County and the other related appellees. With me is Alex Hayden of the Witherspurgen firm. So two judges below properly rejected all of the constitutional claims in this case. As the panel has already drawn out, Nassau County, like many jurisdictions around the country, collects income and expense information from commercial property owners so that they can use an income capitalization approach to value those properties. The appellant chose not to submit this information. It's not disputed in the record that the appellant had actual knowledge of this regime and the need to submit this information all along. No, I think what they seem to be suggesting is, and based on Bakajian, which I guess we're pronouncing it differently than Mr. Smith, but we're talking about the same case, which is that, yeah, if the information you don't think is that important, then you don't need to comply and the fine can't be what the legislature said it should be. In other words, that's your defense to the fine is that it wasn't particularly relevant in this case. So I would say a few things about that, Your Honor. First of all, nothing in Bakajian suggests that a litigant challenging a fine can challenge the underlying premise of the statute. Nothing in Bakajian suggests that a criminal defendant or a civil litigant, in this case a business trust that's been fined, can say, well, the premise of collecting this information in the first place is wrong. But the premise of the fine in that case was that the harm to the government is, you know, that all of that money is leaving the country and so you could forfeit the money, right? And then the court says, no, that that premise is wrong because he could have if he had just notified, provided information, right? And so here the premise of this fine is that the injury to the county is that we can't provide an accurate assessment of the property and we might be on the hook for a tax error. And, you know, Mr. Smith is saying, well, that premise is not true because actually this information wouldn't have helped you assess the taxes on this property. So why aren't those arguments in parallel? Because in Bakajian, the Court specifically says as its very first premise, as its very first controlling consideration, that under ordinary circumstances, the level of punishment for an offense is up to the legislature. What the Court in Bakajian did is say the statutory purpose that Congress was looking to control is money leaving the country for drug deals or whatever else. And it said this fine is not consonant with that purpose, with Congress's purpose. This is not achieving the purpose that Congress set out to do. Right. But is it that what Mr. Smith is saying is the case here? That although as a general matter, this requirement on businesses makes sense, for malls it doesn't, and therefore, like the individual in Bakajian, this is the same thing. But this is not the same thing because in Bakajian, the government was collecting information for the purpose of catching felons. Here the government is collecting information so that it can employ that information in its own assessment. So what you're basically doing is applying the second whatever it's called factor, which is that these are the people at whom the statute is directed, whereas that wasn't obviously true in the Skidmore case. Well, that's certainly the case. And in the appellant's brief, that's where they locate this consideration that supposedly the data was useless. By the way, the data is not useless. It just can't be. Oh, I'm sorry. I missed the zoom. I apologize. No, don't apologize. It's just the difficulty of the medium. In Bakajian, Mr. Bakajian forfeited all the money he had on him, didn't he? So it wasn't really just about a fine. It was like the total taking of all the money. And so there was quite the disconnect between his kind of innocent traveling with the money and the ultimate, what the statute was directed at. That seems a far different matter than what we have here. That's right. And the court in Bakajian, in keeping with its concern that the level of punishment is for the legislature, compared the forfeiture to the sentencing guidelines that were on the books at the time and said, these don't match up. That's a far cry from comparing the fine to the appellant's view of how useful it did or did not pan out to be years later, or to the previous fine regime, which the legislature had chosen to replace. Under the first factor, we are considering the fine in relation to the bad activity that we're deterring, right? Yes. And all of these factors are... So hypothetically, let's say Nassau County did just require the disclosure of completely useless random information and imposed a kind of crushing proportional fine if you failed to disclose that information. Would that violate the excessive fines clause? That would violate the substantive due process clause. That would potentially violate the substantive due process clause. What this really is, is a substantive due process argument in Eighth Amendment clothing. They're saying that the legislature didn't know what it was doing, essentially didn't have a rational basis. There's plenty of information in the record as to the rational basis that the government had at the time. So let's say, okay, you have to disclose the information, but if you make a grammatical mistake or a typo in the way you fill out the form, we're going to fine you $10 million. Like, we'd say, well, okay, maybe you can require properly filled out forms, but that does seem excessive, right? Like, we do... We are going to, to some extent, take a look at the purpose for which the fine is being imposed, aren't we? I think we're taking a look at the... But the purpose... Yes, but the purpose for which the fine is imposed is a matter of legislative intent that's committed to the legislature. If the legislature didn't have a rational basis for what it was doing, that's a substantive due process argument. Right. And so here you have... Like, there's a rational basis because the information does help you do tax assessments. I get that. Yeah. I take it that you're disputing the premise that it's not useful as applied to moles. Absolutely, Your Honor. But let me just ask just sort of the way the excessive fines clause is supposed to work. If it were true that there were certain kinds of property which the information is not useful, would that matter to the excessive fines clause, or is the excessive fines clause really just about sort of a facial challenge to fines? Your Honor, I don't want to take a position that destroys every extreme scenario that could possibly be dreamed up. But by and large, especially in this case, where this is a matter of getting information for an approach to assessment that's used by a wide variety of jurisdictions around the country, I don't think we're anywhere close to that. Could one dream up a scenario where the essence of the offense is a complete boulder dash? I suppose there's nothing in Bajikadzian to suggest that the courts are empowered to question the legislature in that way. Bajikadzian took for granted that Congress could, you know, enact fines in order to achieve this purpose, and it's just doing a kind of ends means fit between the purpose and the fine. Can I ask just a question about the notices? I mean, there's this dispute as to whether to receive the notification of the imposition of the fine. You know, the statute does allow you to have an Article 78 proceeding to challenge the imposition of the fine. And so I take it that the way things would normally work is they'd be able to have a hearing where they could say, incorrectly, you can't get the fine, or you shouldn't impose it, or whatever. They say they didn't get the notice, and so they didn't get the hearing. Because you have to impose the fine either by initiating a collection proceeding or imposing a tax lien, does that mean there will be a proceeding at which they'll be able to say we never got notice, or have they lost that opportunity? So I — so there were two — there were two opportunities that this appellant had to challenge this fine, okay? First, the notice letter that you're talking about. I want to be clear because I think it's important to — and I know my time is dwindling, but I think it's important to lay out the facts a little bit. So what happened here is the county does — takes the addresses that it has, does a mail merge, and sends out thousands of these notice letters, right? And so there are people where — there are addresses that are bad addresses where the envelope comes back undeliverable. That's — and those people got off of the fine. I think it's important to note that that's in the record. That's in Mr. Arcurio's testimony. This scenario is where a property owner pops up and says, yeah, I know you had the right address, and we have letters stamped that they received it from before and after. Whether or not they actually got the notice, my question is different, which is that when the State tries to collect on the fine, will there — will there be a proceeding in which they'll get to argue we never got the notice and therefore we were deprived of a hearing? I think that — that role is filled by — of the possibility of judicial review is filled by the ability to file an Article 78 in which this appellant could get — could ask for relief to control any potential lien or other deprivation of property, which is exactly what happened. In Mr. Larson's deposition, he describes that there was a TRO entered in a separate State court challenged by a different party, and the Retail Property Trust glommed on to that with a stipulation that applies to us, too. So they — not only did they have the ability to control this possibility of a deprivation before it happened, they actually did. So — What was the result of that proceeding? So the Article 78 claim that the appellant filed in this case was dropped as a matter of supplemental jurisdiction when the constitutional claims were properly found. Right. So that means that without prejudice, can they still bring it in State court, or it's now too late, or what's — just what's the status? There may be — there may be a limitations issue we have to reserve on that. That's yet to be decided. But the point is that the day the fine was imposed, they could have filed their Article 78. They could have filed it separately in State court the day of the decision in this case. So they've had ample opportunities, and perhaps now, perhaps not, but in any event, there have been many opportunities to go in — But you're saying — Even counsel can go seek a TRO. But you're saying the State process gives them the right to come into court and say, you can't impose the fine because we never had the opportunity to challenge it, and whether they sat on that right too long or not, you know, shouldn't affect this case? That's right. And that's what a number of Second Circuit decisions that have been cited in this case tell us, is that an Article 78, whether you call it pre-deprivation or post-deprivation, under these circumstances, is very much an appropriate control on losing your property without an opportunity to be heard. In fact, you filed no — there's no lien been filed with regard to the penalty, right? There's no lien that's been filed. What appellants are hopping up and down about in their briefs is a letter that says we might one day file a lien. Right. Right. So that's actually what I was suggesting. So if you file a lien, that also would be an action of the government they probably could challenge, right? Yes, indeed. There would be judicial review. There would be an opportunity for judicial review of that before foreclosure. And the cases that we cite about Federal tax liens indicate that even that is considered pre-deprivation and, therefore, any opportunity for judicial review basically passes due process muster. So they've had their chances coming and going, is really the bottom line here. And with respect to the notice letter, we're in a scenario where someone comes and says, I know you had the right address, I just didn't get it. And their argument is that the Federal Constitution requires this government to give them a do-over on that. And that's an extreme position. But even that is backstopped by Article 7. Sorry. Could I ask, I don't want to interrupt Judge Venash either, but before he sits down, I'd like to ask him a question about the sanctions. But you agree, I understand maybe it's not a Federal constitutional matter, but if they could show, you know, the postman died on the way and we can show that the letter never reached us and we never had notice or whatever, like, that might be a reason why the State courts would say, you know, they need to have an opportunity to contest the fine or something. Maybe. Sounds like a great argument for an Article 78 case. For the State court, yeah. I think it's important in this regard to reference the Jones case, that appellant cite, in which Chief Justice Roberts describes exactly that scenario. I think that may be consciously or subconsciously where Your Honor is getting this. Oh, if the letters fall down the storm drain and the government saw that happen, don't they have to send out another letter? Yes, but that's not what happened here. The bad address scenario is not what happened here either. What happened here is we followed the process to send out letters, and once or twice a year, this is Mr. R. Curry's testimony, once or twice a year someone pops up and says, yeah, I know you have the right address, but I didn't even get it. And it's a very aggressive position to say that it's a constitutional requirement that you have to give them a do-over on the hearing deadline. And even if you don't buy that, it's backstopped by Article 78. So they've had a number of chances. And please, Your Honor, with respect to the sanctions, whatever you'd like to ask. Why don't you speak briefly to the sanctions? Your opponent hammers pretty hard that Mr. Curry says that what you're asking for is totally useless information. What's your view of that? Yes. So first of all, I would be not doing my job if the first words out of my mouth on the sanctions weren't abuse of discretion. It's a high standard to overturn the Court's determination, and of course it's two judges below. I would just encourage the Court to follow up on the citations that are the supposed categorical statements about the use of the data. They're very, very far from any kind of intentional misstatement about something that happened in the world. These are basically general statements that data is useful for assessment and that we worked with a consultant. But in any event, the statements we're talking about are dated 1025.17, 531.18, and 1112.18. They had the chance to cross-examine these statements. Mr. O'Curry was deposed by this party afterwards. So if litigation is a truth-finding machine, we've done our jobs here because they had the chance to ask questions about these statements. But in any event, these are not relevant to the decision. Both judges below expressed that these were not or I apologize for saying both. I think perhaps it was only Judge Ginsburg. But in the decision below, it was made clear that these were not statements that were relied upon by the Court in making a decision. And again, I think there's nothing here to say that the Court abused its discretion and in tandor this perhaps was a sanctions motion that should not have been made. The only other thing on the sanctions motion is the information security. That's not relevant to any factor or any theory in this case. But there's nothing false here either. All that happens is that the Court makes a decision, and what happens is that the appellant picks on a declaration that was made by Mr. Paganini, who's affiliated with the county, where he talks about security measures. And then when he's deposed, he says, well, I did have knowledge of what I was talking about, but it applied to X database, not Y database. Again, they had the chance to cross-examine it. It's not some false statement where a smoking gun came out and said you hid this from us for all time. It's very, very far from that. So my suggestion at the risk of going on and on is just that it might behoove the Court, if you're even interested, to run down those citations, because you'll find that it's less than meets the eye. All right. Thank you very much to the panel. Thank you. We'll now hear from Mr. Smith for two minutes every vote. Thank you, Your Honor. And let me just pick up on the sanctions that the Court had asked about. I would very much encourage the Court to review the record in this case, because the District Court found that this was a discovery dispute and that there was no misrepresentations to the Court. And in fact, the record indicates that there were affidavits submitted by Mr. Arcuray in connection with a motion to dismiss the case and in connection with a motion to stop what became one of the most important depositions in the case, to quash the deposition subpoena of Mr. Haberman. And it was Haberman who first testified at the very end of discovery when we were finally permitted to get the testimony about exactly what was and wasn't going on with the affidavit. So I respectfully suggest that those affidavits were used to misrepresent to the Court and to subvert this process. And I can't think of another reason why Rule 11 sanctions shouldn't be imposed when that kind of behavior is at play. Well, I mean, the Court found that it didn't rely on these things. It was ruling on the motion. But, well, but — Are we to disbelieve that? Your Honor, it's not to disbelieve it, but the fact that affidavits were submitted to try to dismiss the case, the fact that affidavits were submitted, which contained false information, and if there's any question about whether there was false information, then there should have been an evidentiary hearing. Well, but not if it's not material. No, but it would have been material, Judge. But the fact that ultimately it wasn't successful because we persuaded the Court to allow us to go forward with the Haberman deposition shouldn't excuse that conduct. The fact that it didn't convince Judge Bianco to dismiss the case shouldn't excuse that conduct. These affidavits, which contained blatantly false information about how this acid data was used and the like, was used to try to subvert the process. And it was Haberman who testified that he talked to Arcuri about the fact that none of the data could be used and had been used or had been used. And Arcuri's response to that was, well — But the Court's finding was that these related to potential disputes that related not only to certain immaterial facts on which the Court did not rely in ruling upon the summary judgment motion. You're saying that that's wrong, or you're saying that that's irrelevant? I'm saying that that is irrelevant for purposes of Rule 11, Your Honor. And it's not okay to submit — So a sanction here was compelled. There's no other way around it. I mean, if use of discretion is the standard and — Your Honor, if I submitted false affidavits to the Court, I would expect that I may get sanctioned for that. And the fact that the Court doesn't — well, I don't know if the Court didn't believe them, because we never — No, but you're saying that you may get — not that you may get sanctioned, that you must be sanctioned. You should be — or at least there should be a hearing about it, Judge. That's what I'm saying, because there's no question that the evidence that we put before the Court was that there was an attempt to subvert this process. This wasn't just a mere discovery dispute. It was not. And that's why we pursue Rule 11 sanctions. On the question of — and I'll just say this. I looked this up yesterday. It's — and I don't know how reliable Google is, but if it's reliable, it's Bakhachian. You had asked about harm. The evidence in this record is that there couldn't have been harm here, the fourth factor in Bakhachian, because this data could never be used for the purpose in which it was being sought. It wasn't a one-off to try to gather data to assess properties on a one-on-one basis. This data is gathered to do statistical models to look for trending. And there's no trends that could be established for models. So I would submit to you there is absolutely no harm to the government by not submitting the data. Also, there was a suggestion that this data wasn't useless. I submit to you the uncontradicted record is that this data was never used, and it could never be used. It wasn't even properly put into a computer for any property holder in Nassau County. And then finally, Judge, you asked about the crushing fine. I would respectfully submit to you that this is a crushing fine. I mean, $4.8 million for failing to submit information, the very purpose of which can't be achieved even if you submitted it. This is it. I would respond. I mean, that wasn't what your client said for the reason we didn't produce it, right? No, the reason, Your Honor, that the This all came out after the fact, and now you've got an argument that, ah, this stuff isn't necessary anyway. Well, but the fine, Your Honor, came after the fact, but there was no knowing violation here. During this period of time, there were, in state court proceedings, there were temporary injunctions that had been issued. In the Boning case, if I'm remembering the name correctly, our client thought that they had protection from that. And therefore, there was no need to submit the information, and they thought that if they were required to, they would get notice. They never got the notice. There's no dispute about that. In fact, many, many property holders didn't get notice. This was not a one-off about a bad address. Do you dispute this? I mean, it sounds like from the exchange with the county that if the county does want to collect the fine, they're going to have to seek payment of the fine or impose a tax lien, and that's an action that the government is going to take, which is going to trigger some kind of a process. So you would be able to say it's being unfairly imposed, right? I'm sorry, Your Honor. That tax lien, as I appreciate, occurs by operation of law. The lien shall be imposed. Yeah, but the point is, I mean, you did have opportunities, and there may still be ones, to push back and make the arguments you're making now. I mean, you decided you wanted to make an if-amendment claim here, but there were opportunities to say, we didn't get notice. This is not a proper fine. You don't need this stuff, really. Malls are different. But you didn't argue those things. You just said, this is an if-amendment problem. Well, we filed the- That's the only response that you made to the- We came to federal court, if that's your point, Your Honor. But in fairness, Your Honor- Did you actually bring with your federal claims the Article 78? You brought the Article 78 claim in federal court. We did, Your Honor. And in fairness- So you were making the state claim, but it wasn't in state court. But that's just dismissed without prejudice. So to the extent that it's still available, you could pursue that in state court. We could, but if you look at the Whitfield decision, Your Honor, the Article 78 proceeding is a summary proceeding. It's not a plenary proceeding. There's no guarantee that we will get a plenary proceeding, which means we don't get constitutional claims, which means we may not get discovery in the case. And I submit to the Court, imagine if we couldn't get discovery to learn what we learned about Haberman. So the idea that we get an Article 78 proceeding, I submit to you respectfully, it's inadequate. It's not the same. It's not nearly the same. It's a summary proceeding. All right. Well, we've got our money's worth from both of you, so thank you very much. We will return to decision.